OPINION OF THE COURT
Lee A. Mayersohn, J.
Petitioner is the landlord of a commercial premises and the respondent is its tenant who operates a small grocery store. Petitioner received a letter from the Queens County District Attorney’s office, dated May 24, 2007, stating the premises had been “used in the illegal businesses of possession of stolen property.” The letter further states, “Pursuant to Section 715 of the Real Property Actions and Proceedings Law, you are required to initiate summary proceedings to evict the tenant(s) . . . from the above mentioned premises within five (5) days of receipt of this notice.” Real Property Actions and Proceedings Law § 715 allows certain government entities to provide written notice to owners and landlords requiring such holdover proceedings and, in lieu of diligent action by the owner or landlord, initiate such a proceeding themselves and seek reimbursement for legal fees and expenses. Prompted by the information in this letter and the requirements of RPAPL 715, the landlord initiated this holdover proceeding.
At trial, the petitioner’s direct case was conducted solely by an Assistant District Attorney. His witness was an undercover police officer who testified that he twice sold small household items that he had represented as stolen to respondent Safed, once for $12 and again for $22. Safed denies purchasing such items and states an employee who no longer works for him had engaged in the transaction. After the purchases, Safed was arrested and the store was ordered closed. Safed appeared in criminal court and pleaded guilty to disorderly conduct in the fourth degree, a violation.
At a time contemporaneous with the initiation of this holdover proceeding, the Corporation Counsel of the City of New York brought a public nuisance action pursuant to Administrative Code of the City of New York §§ 7-704 and 7-706. (See City of New York v Land & Bldg. Known as 37-01 31st Ave., index No. *764 18880/07.) This statute was enacted as a means of controlling illegal activity through the remedy of injunctive relief which prevents the use of a premises by occupants or owners who perform or allow such illegal activity. However, the nuisance action was eventually settled by stipulation and so-ordered by a Supreme Court justice. In the stipulation, the City chose not to pursue the remedy of injunctive relief, opting instead in part for the right to search the respondent’s premises at any time without a warrant. The stipulation is dated August 2, 2007. Although the respondent’s attorney attempted to reach the New York City Police Department to ascertain whether they were continuing with this holdover proceeding, he never received a response. (See respondent’s order to show cause, attorney’s affirmation at 2.) The trial in this matter was eventually held on December 6, 2007.
It is well established that a
“judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first.” (See Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 306-307 [1929, Cardozo, Ch. J.].)
In its stipulation, the City waived its right to pursue the injunctive relief that would have been equivalent to an eviction. The respondent now, in a proceeding initiated contemporaneous with the nuisance action, faces, in effect, the same sanction from a party in privity with the City of New York. This court holds the instant holdover proceeding has been rendered moot by the terms of settlement of the first action against the respondent. In circumstances where a later matter would otherwise be precluded by res judicata or collateral estoppel except for a pretrial settlement without any final adjudication, such settlement has the effect of rendering the later matter moot.
The preclusive doctrines of res judicata and collateral estoppel seek to prevent relitigation of the same claims and issues. “Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties and on the same cause of action.” (See Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999]; Matter of Reilly v Reid, 45 NY2d 24 [1978].) Collateral estoppel, or issue preclusion, “a narrower species of res judicata, precludes a party from relitigating in a *765 subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.” (See Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]; Ripley v Storer, 309 NY 506 [1956].) “Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as a framework, rather than a substitute, for analysis.” (See Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 153 [1988].)
“In the end, the fundamental inquiry is whether re-litigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.” (See Staatsburg Water Co. at 153.)
The issue presented in this holdover proceeding — whether the respondent’s illegal activity should lead to eviction — is identical to that presented in the prior nuisance action. Both are predicated on the same instances of alleged illegal use by the respondent. Both seek as their primary remedy the effective ouster of the respondent. A successful holdover would result in a judgment of possession for the petitioner, evicting the respondent. In the public nuisance action, “its jurisdiction is in rem, and its orders are enforced against the premises. The personal fault of the owner is not a material consideration upon such an application.” (See City of New York v Castro, 160 AD2d 651, 652 [1st Dept 1990].) Had the City prevailed in the public nuisance action, the result would have been injunctive relief preventing the respondent’s use of the premises.
Further, the two parties in the actions — the Corporation Counsel on behalf of the New York City Police Department and the District Attorney’s office — were acting in close enough association to be deemed in privity for the purposes of collateral estoppel. Both the District Attorney’s office and the Corporation Counsel are under the aegis of the government of the City of New York. Obviously, both are concerned with the legal prosecution of city matters and, in these facts, the Corporation Counsel was effectively working on behalf of the New York City Police Department. The attorney’s affirmation in support of the *766 City’s motion in the public nuisance action states its author to be “an attorney in the office of the Legal Bureau of the Police Department.” The same attorney drafted the complaint in the nuisance action. Further, both the District Attorney and the Corporation Counsel were informed of the underlying facts leading to Safed’s arrest by the New York City Police Department and used the Police Department’s evidence and witnesses as the entire basis for their case. The identical officers are the sole substantive sources of evidence in the nuisance action and holdover proceeding. Also, as was noted earlier, the respondent’s motion in the nuisance action states, “the Police Officers would check with their superiors to determine whether the Police Department should continue to insist that the landlord proceed with the hold over proceeding.” The attorney never received a response, though, clearly, at least in these representations, the ultimate authority in proceeding with this holdover was in the hands of the Police Department.
“Generally, a nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.” (See D’Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990].)
“[P]rivity does not have a single well-defined meaning . . . [and] courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances.” (See Buechel v Bain, 97 NY2d 295, 304-305 [2001].)
While it has been held that the Corporation Counsel and District Attorney’s office are discrete entities not given privity (see Brown v City of New York, 60 NY2d 897 [1983]), that holding acknowledged that such determinations are ultimately fact-sensitive and cited a situation where parallel government entities could be found to be in privity (see People ex rel. Dowdy v Smith, 48 NY2d 477 [1979]).
“Since ‘the source of authority of two government entities is not dispositive of whether they are in privity’ for collateral estoppel purposes (United States v Ro *767 mero, 836 F2d 39, 43, cert denied 488 US 817), both the circumstances of the actual relationship between the two agencies as demonstrated by the record and their statutory relationship are relevant.” (See Matter of Juan C. v Cortines, 89 NY2d 659, 668 [1997].)
Given the extent to which litigation of both these matters was inextricably intertwined with the other and derived from a common source, the balance of factors requires that the Corporation Counsel and the District Attorney be deemed in privity as to these two matters. This is particularly true as the common source may have had ultimate authority in litigating both these matters. The extent of the unity of interests and litigation is such that, even if the Corporation Counsel and District Attorney were to disavow knowledge of the other’s proceeding, the court would still require preclusion by collateral estoppel.
It should also be noted that, while brought in the name of the landlord, holdover proceedings pursuant to RPAPL 715 “are clearly brought at the behest of the District Attorney’s office and under threat of statutory sanctions. They are based almost entirely on the evidence provided by the District Attorneys’ [o]ffice. The identification of the District Attorney’s office with these cases cannot be ignored.” (See Ackert v Figueroa, NYLJ, Apr. 8, 1997, at 27, col 2 [Civ Ct, NY County, Gische, J.].) “[T]he District Attorney’s office is the driving force behind these proceedings.” (See Rochdale Vil. v Harris, 172 Misc 2d 758, 761 [Civ Ct, Queens County 1997].) This was particularly true in this trial which was conducted entirely by the Assistant District Attorney alone on behalf of the petitioner. The substantive role of the landlord’s attorney was negligible, limited to the submission of a posttrial brief of a few paragraphs on a rent issue.
Thus, collateral estoppel would seemingly bar this action— except for the absence of a finality of judgment. A stipulation of settlement, so-ordered by a judge, can be given preclusive effect if there are factual or legal findings contained therein. (See Yanguas v Wai Wai Pun, 147 AD2d 635 [2d Dept 1989].) In fact, the discontinuance of an action contained in the language of a settlement stipulation can be given such effect. (See Ott v Barash, 109 AD2d 254 [2d Dept 1985].) However, without such findings, there is no preclusive effect. The terms of the stipulation in the public nuisance action solely concern a recitation of the penalties agreed upon — warrantless searches of the respondent’s premises and a $1,000 fine. It contains no factual or legal findings.
*768 However, as stated above, in two matters in which collateral estoppel would otherwise preclude an issue in the subsequent action except for a settlement without factual and legal findings, the effect of such settlement is to render the latter action moot. “A matter is moot when a determination is sought on a matter which, if rendered, could not have any practical effect on the existing controversy.” (See Lighting Horizons v Kahn & Co., 120 AD2d 648, 649 [2d Dept 1986].) Such is the case in these facts. The prior settlement has removed any live controversy with which the judgment of a holdover proceeding could affect the premises in question. It is a “fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal.” (See Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713 [1980].) Such actions which revolve solely on “academic, hypothetical, moot or otherwise abstract questions” are forbidden. (See Matter of Hearst Corp. at 713.) Mootness is a subset of standing, a component of subject matter jurisdiction, the absence of which may be noted “at any stage of the action, and the court may, ex mero motu [by its own motion], at any time, when its attention is called to the facts, refuse to proceed further and dismiss the action.” (See Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324 [1889].)
The sole appellate authority regarding similar facts has held that an ongoing public nuisance action where the City sought a permanent injunction against the tenants was not rendered moot by the tenants stipulating to vacating the premises in an intervening RPAPL 715 holdover action brought by the District Attorney’s office. (See City of New York v Philips, 272 AD2d 568 [2d Dept 2000]; City of New York v Mor, 261 AD2d 185 [1st Dept 1999].) However, in this matter, the City seeks no further sanction and has agreed to a full settlement of the public nuisance action by warrantless searches of the premises and a civil penalty. Thus, such holding has no application here.
Accordingly, the petition in this holdover proceeding is dismissed.